## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Western Energy Alliance, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION FOR PRELIMINARY** |
| vs. | ) | **INJUNCTION** |
| | ) | |
| United States Department of the Interior, | ) | |
| Sally Jewell, in her official capacity as | ) | |
| Secretary of the United States Department | ) | |
| of the Interior; Bureau of Indian Affairs, | ) | Case No. 1:16-cv-050 |
| and Michael S. Black, in his official | ) | |
| capacity as Director of the Bureau of | ) | |
| Indian Affairs, | ) | |
| | ) | |
| Defendants. | ) | |

_____

On March 11, 2016, the Plaintiff filed a complaint and motion for a temporary restraining order and/or a preliminary injunction. See Docket Nos. 1, 3, and 9. The Plaintiffs contend the Defendants have improperly promulgated a final rule entitled *Rights-of-Way on Indian Land* ("Final Rule"). The Final Rule was scheduled for implementation on March 21, 2016. On February 14, 2016, counsel for the Defendants made their appearances. See Docket Nos. 8 and 11. On March 15, 2016, the Court adopted a joint stipulation of the parties wherein the parties advised the Court they had reached an agreement to voluntarily stay the implementation of the Final Rule until April 20, 2016, thus eliminating the need to adjudicate the request for a temporary restraining order. See Docket No. 13. The Defendants filed a response in opposition to the motion for a preliminary injunction on March 30, 2016. See Docket No. 21. The Plaintiff filed a reply brief on April 4, 2016. See Docket No. 23. A hearing was held on April 11, 2016, to address whether to grant the requested preliminary injunction. For the reasons set forth below, the Plaintiff's motion for a preliminary injunction is denied.

I.      **BACKGROUND**

The Plaintiff, Western Energy Alliance ("Western Energy"), represents more than 450 members involved in all aspects of exploration, production, and transportation of oil and natural gas on federal and Indian lands in North Dakota, and across the western United States. Western Energy advocates for its members' interests related to federal legislative, regulatory, environmental, and public lands policy issues. Western Energy members possess federally granted rights-of-way over Indian lands in North Dakota, and are actively engaged in the process of obtaining and applying to the United States for new rights-of-way grants over Indian lands. Federally granted rights-of-way over Indian lands are required for well pad locations, ingress and egress access roads, gathering pipelines, transportation pipelines, and other oil and gas-related surface facilitates.

The Defendants are the United States Department of the Interior ("DOI"), Secretary Sally Jewell, the Bureau of lndian Affairs ("BIA," and collectively with DOI, the "Agencies"), and BIA Director Michael S. Black. The BIA is charged with administering the provisions of the Final Rule on behalf of the United States.

This case arises out of the Agencies' promulgation of a Final Rule amending 25 C. F.R. Part 169 entitled *Rights-of-Way on Indian Land*, 80 Fed. Reg. 72492-72549, 2015 WL 7273803 (Nov. 19, 2015). Western Energy contends the Final Rule exceeds the authority of the Secretary of the DOI (the "Secretary") as legislatively granted under the 1948 Rights-of-Way for All Purposes Act, 25 U.S.C. § 323-328 (the "1948 Act"); is contrary to existing federal law regarding jurisdiction, taxation, and property rights within federally granted rights-of-way on Indian Lands; and is both arbitrary and capricious. Western Energy also contends the Agencies

have failed to comply with the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. ("NEPA"). More specifically, Western Energy contends the Final Rule alters longstanding and well-recognized concepts and understandings regarding the property rights of rights-of-way grantees, tribal jurisdictional and taxation authority, the transferability of rights-of-way by a grantee, the usage of rights-of-way for more than a single purpose; and the issuance of rights-of-way under other statutes. The declaratory judgment action is brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 et seq. (the "APA"), seeking a declaration that the Final Rule violates the APA, and an order from the Court for a preliminary and permanent injunction preventing its implementation.

In 1948, Congress enacted legislation "to simplify and facilitate [the] process of granting rights-of-way across Indian lands." Nebraska Pub. Power Dist. v. 100.95 Acres of Land in Thurston et al., 719 F.2d 956, 959 (8th Cir. 1983) (discussing enactment of a 1948 Act to empower the Secretary of the Interior to grant rights-of-way for various purposes across lands of individual Indians or Indian tribes, communities, bands or nations). "Prior to 1948, access across Indian lands was governed by an amalgam of special purpose access statutes dating back as far as 1875 . . . this statutory scheme . . . created an unnecessarily complicated method for obtaining rights-of-way." Nebraska Pub. Power Dist., 719 F.2d at 958. The 1948 Act delegates broad authority to the Secretary to "grant rights-of-way for all purposes, subject to such conditions as he may prescribe" over lands held in trust for Indian tribes or individual Indians, as well as over lands held in fee by Indian tribes or individual Indians that are subject to restrictions on alienation. 25 U.S.C. § 323. Section 324 of the 1948 Act conditions the right-of-way grant on consent from landowners, providing certain exceptions related to individual Indian landowners.

Section 325 requires that the landowner receive just compensation for the grant.  The 1948 Act does not repeal prior rights-of-way statutes.  25 U.S.C. § 326.  Section 328 authorizes the Secretary to promulgate regulations to carry out the broad authority delegated by the Act.

The DOI first promulgated regulations to implement the 1948 Act in 1951.  16 Fed. Reg. 8,578 (Aug. 25, 1951).  In 1967, revisions of the regulations were proposed in order to remove archaic language, reduce costs, clarify the language, and remove advisory language.  32 Fed. Reg. 5,512 (Apr. 4, 1967).  After a comment period, final revised regulations were adopted.  33 Fed. Reg. 19,803, 19,804 (Dec. 27, 1968).  Minor modifications to the regulations were also made in 1980.  45 Fed. Reg. 45,909 (July 8, 1980).

On June 17, 2014, the DOI published in the Federal Register a Proposed Rule entitled *Rights-of-Way on Indian Land*.  79 Fed. Reg. 34455.  The purpose of the Proposed Rule was to update and streamline the process for obtaining BIA grants of rights-of-way on Indian land and BIA land while supporting tribal self-determination and self-governance.  After a number of extensions, the deadline for public comments closed on November 28, 2014.  In response to the Proposed Rule, Western Energy submitted comments to the Agencies on November 26, 2014.  In addition, Western Energy also met with the Agencies to discuss and address Western Energy's concerns with the Proposed Rule on or about September 29, 2014.

On November 19, 2015, the Agencies published the Final Rule in the Federal Register with an effective date of December 21, 2015.  80 Fed. Reg. 72492.  Western Energy requested an extension of the Final Rule's effective date, and met again with the Agencies on December 9, 2015.  Based on Western Energy's request, and requests from others including tribal representatives, the Final Rule's implementation date was extended 90 days, until March 21,

2016.  Additional attempts by Western Energy to reform the Final Rule and extend its effective date failed.

Western Energy commenced this declaratory judgment action in federal court on March 11, 2016.  The complaint mounts a facial challenge to the Final Rule and contains four claims: (1) the Final Rule exceeds the Agencies' delegated authority; (2) the Final Rule is contrary to law; (3) the Final Rule is arbitrary and capricious; and (4) the Final Rule violates the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370h ("NEPA").  By stipulation of the parties, the Final Rule's implementation date was extended until April 21, 2016.  Now before the Court is Western Energy's motion for a preliminary injunction which would stay the implementation of the Final Rule pending a final determination of the case on the merits.  See Docket No. 9.

## II.   LEGAL DISCUSSION

### A.   ADMINISTRATIVE PROCEDURE ACT

Western Energy seeks judicial review of the Final Rule under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA").   Under the APA, review is limited to a determination of whether the agency acted in a manner that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Although this inquiry is thorough, the standard of review is narrow and highly deferential to the agency. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).  It is well-established that courts are not free to substitute their judgment for the agency's discretion or overturn the agency's decision solely because they would have reached a different outcome.  Overton Park, 401 U.S. at 416;

Sierra Club v. Kimball, 623 F.3d 549, 558-59 (8th Cir. 2010); Cent. S.D. Coop. Grazing Dist. v.

Sec'y of U.S. Dep't of Agric., 266 F.3d 889, 895 (8th Cir. 2001). The Court's review is limited

to the administrative record before the agency at the time that it took the challenged action:

> It is a basic principle of administrative law that review of administrative decisions is "ordinarily limited to consideration of the decision of the agency ... and of the evidence on which it was based." United States v. Carlo Bianchi & Co., 373 U.S. 709, 714-15 (1963). . . . In reviewing agency action under the "abuse of discretion" standard specified in the APA, 5 U.S.C. § 706(2)(A), "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam).

Robinette v. Comm'r of I.R.S., 439 F.3d 455, 459 (8th Cir. 2006).


### B.   FACIAL CHALLENGES TO REGULATIONS

Western Energy has opted to mount a facial challenge, as opposed to an "as applied"

challenge, to the Final Rule. To prevail in such a challenge, Western Energy carries the heavy

burden of "establish[ing] that no set of circumstances exists under which the regulation would be

valid." Reno v. Flores, 507 U.S. 292, 301 (1993) (citation omitted); see also United States v.

Salerno, 481 U.S. 739, 745 (1987) (a facial challenge is "the most difficult challenge to mount

successfully, since the challenger must establish that no set of circumstances exists under which

the [rule] would be valid"); Babbitt v. Sweet Home, 515 U.S. 687, 709 (1995) (O'Connor, J.,

concurring) ("there is no need to strike a regulation on a facial challenge out of concern that it is

susceptible of erroneous application"); Anderson v. Edwards, 514 U.S. 143, 156 n.6 (1995)

(plaintiffs "could not sustain their burden [of showing regulation facially invalid] even if they

showed that a possible application of the rule . . . violated federal law"); INS v. Nat'l Ctr. for

Immigrants' Rights, 502 U.S. 183, 188 (1991) ("That the regulation may be invalid as applied in

[some] cases, however, does not mean that the regulation is facially invalid because it is without statutory authority."); Sherbrooke Turf Inc. v. Minn. Dep't of Transp., 345 F.3d 964, 971 (8th Cir. 2003) (a facial challenge to regulations requires a careful look at whether they may be "applied under any set of factual circumstances") (emphasis in original).

### C.   PRELIMINARY INJUNCTION

Western Energy seeks a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.  The primary purpose of a preliminary injunction is to preserve the status quo until a court can grant full, effective relief upon a final hearing.  Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984).   A preliminary injunction is an extraordinary remedy, with the burden of establishing the necessity of a preliminary injunction placed on the movant.  Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989).  The court determines whether the movant has met its burden of proof by weighing the factors set forth in Dataphase Systems, Inc., v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981).  The *Dataphase* factors include "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  Id.  "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction."  Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting

Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)); see CDI
Energy Servs., Inc. v. W. River Pumps, Inc., 567 F.3d 398, 401-03 (8th Cir. 2009).


### 1.        PROBABILITY OF SUCCESS ON THE MERITS

Western Energy contends in its complaint that the Final Rule exceeds the Agencies
delegated authority, is contrary to law, is arbitrary and capricious, violates NEPA, and its
implementation will result in immediate and irreparable harm to Western Energy members.  See
Docket No. 1.  A party challenging a federal or state statute or other government action who
seeks a preliminary injunction must demonstrate that it is "likely to prevail on the merits," a
higher bar than the more familiar "fair chance of prevailing" test.  See Planned Parenthood
Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732-33 (8th Cir. 2008); Johnson v. Minneapolis Park
& Recreation Bd., 729 F.3d 1094, 1098 (8th Cir. 2013).  When evaluating a movant's "likelihood
of success on the merits," the court should "flexibly weigh the case's particular circumstances to
determine 'whether the balance of equities so favors the movant that justice requires the court to
intervene to preserve the status quo until the merits are determined.'"  Calvin Klein Cosmetics
Corp., 815 F.2d at 503 (quoting Dataphase, 640 F.2d at 113).  The Eighth Circuit has held that of
the four factors to be considered by the district court in considering preliminary injunctive relief,
the likelihood of success on the merits is "most significant."  S & M Constructors, Inc. v. Foley
Co., 959 F.2d 97, 98 (8th Cir. 1992).

Western Energy contends the Agencies promulgation of the Final Rule exceeds the
authority delegated by statute by altering property rights, permitting surface owners to terminate
rights-of-way without Agency involvement, and by permitting the BIA to impose trespass

sanctions in the absence of statutory authority.  Western Energy further contends the Final Rule is contrary to law because the rule alters property rights, expands tribal jurisdiction, authorizes tribal taxation of rights-of-way, and conflicts with well-established United States Supreme Court precedent.  The Agencies contend Western Energy has failed to demonstrate that no set of circumstances exist under which the Final Rule would be valid.

The Court will preface its analysis by noting that Western Energy has mounted a facial challenge to the Final Rule.  It is very difficult to prevail on such a challenge because if the challenged rule is valid under any set of circumstances, the challenge fails.  Flores, 507 U.S. at 301.  A facial challenge to government action is the "most difficult challenge to mount successfully." Salerno, 481 U.S. at 745.

In this case, the heavy burden presented by a facial challenge, combined with the extraordinary nature of the remedy sought, proves fatal to Western Energy's motion for a preliminary injunction.  It is clear the Secretary of the Interior has the authority under the 1948 Act to prescribe any necessary regulations for the purpose of administering the Act.  25 U.S.C. § 328.  The Final Rule's sixty-page preamble provides the Secretary's reasons for modifying the current regulations.  See Nat'l Home Equity Mortg. Ass'n v. Office of Thrift Supervision, 373 F.3d 1355, 1360 (D.C. Cir. 2004) ("An agency's interpretation of a statute is entitled to no less deference, however, simply because it has changed over time.").  The Final Rule consists of eighty-one separate sections, the vast majority of which go unmentioned in Western Energy's complaint and briefs.  Western Energy seeks to enjoin the implementation of the Final Rule in its entirety.

The Final Rule may be susceptible to an erroneous application given its many references to tribal law, tribal jurisdiction, and tribal authority which may or may not apply given the particular circumstances and the language of a particular right-of-way.  Federal law defines the contours of tribal jurisdiction over non-member activities within rights-of-way.  The United States Supreme Court, while acknowledging that tribes retain certain inherent sovereign powers, has adopted a general rule that tribes are presumed to lack jurisdiction over non-members absent certain specific circumstances or exceptions.  Montana v. United States, 450 U.S. 544, 565 (1981).  However, it is clear that many circumstances exist, especially with regard to rights-of-way granted after the Final Rule's implementation, in which the Final Rule may validly apply.  For example, Western Energy's concerns regarding trespass actions are entirely speculative as no such actual or threatened action is before the Court and, in any case, the Final Rule clearly states such action must be taken "under applicable law."  See Final Rule § 169.413.

The Final Rule does not contain any sweeping grant of tribal jurisdiction or taxation authority over rights-of-way.  Rather, the Final Rule provides in Section 169.9 that rights-of-way are subject to federal law and that tribal law applies only to the extent "tribal laws are inconsistent with applicable Federal law."  See Final Rule § 169.9.  Section 169.10 points out that the Final Rule does not diminish tribal jurisdiction.  Section 169.10 states that rights-of-way "may be subject to taxation by the Indian tribe with jurisdiction" but any taxing authority is subject to federal law.  See Final Rule § 169.10 (emphasis added).  Any inquiry applying federal law in this context would be fact intensive and cannot be done in the abstract context of a facial challenge to the Final Rule.  Suffice it to say that it cannot be said of these new provisions that there are no set of circumstances under which the Final Rule would be valid.

10

Another provision Western Energy objects to concerns negotiated remedies and the termination of rights-of-way.  See Final Rule § 169.403.  However, it is entirely within the control of the grantor to decide whether to accept any of the negotiated remedy terms contemplated by Final Rule § 169.403.  Thus, there are clearly sets of circumstances that exist in which this provision or rule would be valid.

The Court has carefully considered and analyzed the record along with the arguments presented at the hearing.  The Court finds Western Energy has failed to shoulder the heavy burden of demonstrating a facial challenge to the Final Rule is likely to succeed on the merits. In so finding, the Court expresses no opinion as to the ultimate outcome of the case and whether Western Energy's challenge to the Final Rule, or some provisions of it, may be successful in the future.  Accordingly, this *Dataphase* factor weighs against the issuance of a preliminary injunction.


### 2.    IRREPARABLE HARM

Western Energy contends its members will suffer irreparable harm if the Final Rule, in its current form, is implemented.  "The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."  Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999).  It is well-established that when there is an adequate remedy at law, a preliminary injunction is not appropriate.  Modern Computer Sys., Inc., 871 F.2d at 738.  To demonstrate irreparable harm, a plaintiff must show the harm is not compensable through an award of monetary damages.  Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991); Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D.

Minn. 2007) (citing <u>Northland Ins. Co. v. Blaylock</u>, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000)).  The Eighth Circuit has explained that a district court can presume irreparable harm if the movant is likely to succeed on the merits.  <u>Calvin Klein Cosmetics Corp.</u>, 815 F.2d at 505 (citing <u>Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.</u>, 633 F.2d 746, 753  (8th Cir. 1980)).

Western Energy contends the Final Rule irreparably harms the property rights of its members in a number of ways including restricting the alienability of existing rights-of-way, allowing the termination of rights-of-way without the consent of the grantor, restricting grantee renewal rights in existing rights-of-way, and devaluing existing rights-of-way by subjecting them to new procedural rules.  In addition, Western Energy contends the BIA is unprepared to implement the Final Rule.  The Agencies contend these allegations are insufficient to warrant injunctive relief.

The Court finds that Western Energy's allegations fail to describe a "concrete and particularized" injury that is "actual and imminent, not conjectural or hypothetical." <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 493 (2009).  It is clear the alleged harms are contingent on future action by the Agencies, Indian landowners, and/or tribal government.  Where the alleged harm is contingent it can hardly be described as "certain and great and of such imminence that there is a clear and present need for equitable relief."  <u>Iowa Utils. Bd. v. Fed. Commc'ns Comm.</u>, 109 F.3d 418, 425 (8th Cir. 1996); <u>see</u> <u>also</u> <u>Chlorine Inst., Inc. v. Soo Line R.R.</u>, 792 F.3d 903, 915 (8th Cir. 2015) (demonstrating the possibility of harm is not enough to warrant a preliminary injunction.)

Western Energy's contention that the Final Rule permits existing rights-of-way issued to its members to be terminated without the involvement of the grantor is hotly contested.  Given

the contingent nature of this alleged harm, it in no way demonstrates the type of concrete harm necessary to support the grant of a preliminary injunction.  In so far as the Final Rule applies to future grants of rights-of-way, any harm would be hypothetical and thus would not support the issuance of injunctive relief at this stage.

Western Energy's contention that the Final Rule will subject its members to tribal jurisdiction or taxation are based on a litany of contingencies too numerous to contemplate. Such determinations are fact intensive, contingent on future events, and require the application of United States Supreme Court case law and other federal case law, rather than the simple citation of an administrative rule.  Further, Western Energy's bare assertion that the BIA is unprepared to implement the Final Rule, and what may occur if the BIA fumbles the implementation of the Final Rule, is speculative at best and does not support a claim of concrete and particularized harm.  While it is possible the alleged harms <u>may</u> occur at some time in the future to some of Western Energy's members, those harms can be addressed when they actually occur.[1]  Western Energy's assertions of harm, while plausible, are not sufficient to state a claim of "concrete and particularized" and "actual and imminent" harm necessary to warrant the extraordinary remedy of a preliminary injunction staying implementation of the Final Rule. <u>Summers</u>, 555 U.S. at 493

---

[1]The passage of the Final Rule by the Department of the Interior arguably appears to have been ill-advised, unnecessary, devoid of common sense, and will result in a never-ending invitation to future litigation.  Nevertheless, this Court is not free to substitute its judgment for the agency's discretion, or overturn the rule simply because the Court may have reached a different outcome.

3.      **BALANCE OF HARMS AND PUBLIC INTEREST**

The balance of harm factor analysis examines the harm to all parties involved in the dispute and other interested parties, including the public.  Dataphase, 640 F.2d at 114; Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 372 (8th Cir. 1991).  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (citation omitted).  "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  Amoco Prod. Co. v. Village of Gambell, 480 U.S.531, 542 (1987).  These factors—balance of harms and the public interest—"merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).  Moreover, granting preliminary relief is only proper if the moving party establishes that entry of an injunction would serve the public interest.  Dataphase, 640 F.2d at 113.

The Court has carefully considered the balance of harms and the public interest *Dataphase* factors and acknowledges the analysis of these factors is a close call.  The public interests in this case are many and varied.  "While the public has an interest in agencies administering laws that Congress enacts," there is also a public interest in ensuring that federal "agencies do not extend their power beyond the express delegation from Congress."  First Premier Bank v. U.S. Consumer Fin. Prot. Bureau, 819 F. Supp. 2d 906, 922 (D.S.D. 2011) (granting stay of implementation of amended federal regulations).  On the other hand, a preliminary injunction would delay the implementation of a Final Rule which seeks to update and modernize the process for obtaining BIA grants of rights-of-way on Indian land which has

been the subject of an extensive and lengthy comment period. In balancing the equities and the public interest, while also recognizing Western Energy's failure to demonstrate a likelihood of success on the merits and irreparable harm, the Court concludes these *Dataphase* factors weigh against the issuance of a preliminary injunction.

### III.   CONCLUSION

After a careful review of the entire record, and a careful consideration of all of the *Dataphase* factors, the Court finds that Western Energy has not met the burden of establishing the necessity of a preliminary injunction. The *Dataphase* factors, when viewed in their totality, weigh against the issuance of a preliminary injunction. The Court notes that both parties presented very well-reasoned legal arguments in support of their respective positions. Suffice it to say the need for this new Final Rule is unclear at best, particularly when the long-established process for obtaining BIA grants of rights-of-way across tribal lands seems to have worked relatively well for more than 60 years. The undersigned is very familiar with the process for obtaining grants of rights-of-way on reservation lands in North Dakota, as a direct result of significantly increased oil field activity in western North Dakota. Although the current regulations may arguably have been in need of some updates and "modernization," the Final Rule will likely create far more confusion, chaos, and litigation than what the Department of the Interior ever contemplated. However, the Court finds the *Dataphase* factors, and the equities, weigh against the granting of the extraordinary remedy of a preliminary injunction. Accordingly, Western Energy's motion for a preliminary injunction (Docket No. 9) is **DENIED**. Western Energy's emergency motion for a stay (Docket No. 31) is **DENIED as moot.**

**IT IS SO ORDERED**.

Dated this 19th day of April, 2016.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court